The opinion of the court was delivered by
Gibson, J.
Leaving the authority of Sims v. Gurney and Smith, untouched, it is sufficient to say, that case does not go as far as the case at bar. I cannot discover in the facts submitted by the jury, any settled determination to run the vessel ashore at all. The protest of the master and his officers at Gibraltar, and the deposition of the master here, comprise all the evidence in the cause; and in the protest it is said, that when the schooner began to start from her moorings, the jib was hoisted to make her pay round, which was found to be impracticable, as the jib sheets instantly parted, and the sail was hauled down. The cables were at the same time cut, and the helm was put hard up, “in order,” as it is expressed, “to get into the best place for the preservation of their lives, vessel and cargo.” What that best place was — whether a' particular part of the shore, or the open sea, is not stated. In the deposition, the master swears, in his direct examination, “that his intention was to get out to sea, which he probably would have effected, if the sheets had not parted.” This undoubtedly gives a *65 claim to general average, for the loss of the cables and anchors, but for nothing else, as nothing else was deliberately sacrificed to the attainment of the object; for an accidental loss which happens in an endeavour to bring about a very different event, is not a subject of compensation; and such, according to this part of the evidence, would be the casualty of stranding in an endeavour to get out to sea. It is true, however, that it came out in the cross examination, that in a consultation between the master and his officers, before any act was done, it was said, “they were going ashore then, and therefore, it was best to out the cables, and do what they after-wards did, to try in the first place, to go to sea; and if they could not do that, to go ashore elsewhere, as they might lose their lives where they where going.” But even this will not make out the plaintiff’s case. If there were, in fact, an intention to run the vessel ashore, there was no act done in. pursuance of it, for the vessel became ungovernable the instant the cables were cut, and was driven bn the rock's exclusively by the agency of the wind and thé waves. All the acts were done in furtherance of the intention to get out to sea; for it was only when that should be found to be impracticable, that the subordinate intention of running ashore was to be'put in execution. It never was put in execution; and a mere intention to sacrifice a part for the good of the whole, without an act done in pursuance of it, is insufficient: it is necessary that the loss arise from the direct agency of some one acting for the general benefit. But if the acts done are not particularly referrable to either intention, the consequence is, they were done in pursuance of no settled intention; and it is not enough that there be a deliberate intent to do an act that may or may not lead to a loss; there must be a deliberate purpose to sacrifice the thing at all events, or at the very least, to put it in a situation in which the danger of eventual destruction would be increased; and it is this deliberate purpose combined with a view to the general welfare, which is the distinguishing feature between general and particular average.- But how can it be said, that the vessel' was devoted to destruction by the master and crew, when at the period material to the question, every arm was nerved and every yard braced, to escape from the very destruction which ensued ? I readily concede, that the chances between getting out of the harbour and going ashore, were equal or nearly so, although the master thinks they were in favour of the first, and that the catastrophe was occasioned by the accidental parting of the jib sheets; nor do I esteem it of any importance that the master and crew thought their situation would, in any event, be bettered by the measures afterwards taken: both are equally remote from a deliberate intention to sacrifice the ship, or to increase the risque of it; and without that, there can be no claim to general average. I am, therefore, of opinion, that the plaintiff is entitled to judgment as for a total loss, leaving to the defendant the right to pursue, against the cargo, or those who are responsible in re* *66 spect of it, for contribution for the loss of the cables and anchors, and, of the masts which were cut away while the vessel was on the rocks; as well as for any other sacrifice of the rigging or hull, which can be shown to have'been made for the common benefit.
Judgment for plaintiff.